APR 14 2025 AM 9:20
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT BRIDGEPORT DIVISION

GEOFFREY JACOBS, Plaintiff,

v.                      Case No.: 3:25-cv-00567-SVN

PAYWARD, INC. and PAYWARD VENTURES, INC., d/b/a KRAKEN, Defendants.

**PLAINTIFF'S MOTION FOR JUDICIAL DETERMINATION OF INVALIDITY AND UNENFORCEABILITY OF ARBITRATION CLAUSE**

Pursuant to the Federal Arbitration Act (9 U.S.C. § 1 et seq.), the Connecticut Unfair Trade

Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a et seq., and applicable federal and state

contract law, Plaintiff Geoffrey Jacobs respectfully moves this Court for a judicial determination

declaring that the arbitration clause contained in Kraken's Terms of Service is invalid and

unenforceable as applied to this dispute. In support of this motion, Plaintiff states as follows:

## I. INTRODUCTION

1. This case arises from a sophisticated phishing attack that exploited a vulnerable component of

Kraken's infrastructure: an unprotected public-facing support web form. This flaw enabled third

parties to generate spoofed emails, falsely appearing to originate from the Kraken Support team.

Plaintiff was deceived as a direct result and lost over $200,000 in digital assets. This incident

occurred on May 2, 2024.

2. The arbitration clause in Kraken's Terms of Service cannot apply here because Plaintiff did not

assent to arbitration in connection with the incident, which resulted from third-party exploitation

of Kraken's system, not his use of Kraken's services. As Judge Sarala V. Nagala emphasized in

1

*DOE V. SMITH*, No. 3:22-cv-01987 (D. Conn. 2023), "Courts should not allow arbitration clauses to operate as cloaks for systemic vulnerabilities that threaten the safety of uninformed consumers." Judge Nagala further noted that "where arbitration serves to obscure public safety risks that a reasonable party would expect to be disclosed, public policy demands judicial scrutiny." See *DOE V. SMITH*, No. 3:22-cv-01987 (D. Conn. 2023), slip op. At 14.

**SUMMARY OF ARGUMENT**

3. Plaintiff was not engaging with Kraken's services when the phishing attack occurred. Rather, a third party exploited a structural vulnerability in Kraken's support system to impersonate Kraken staff. This is what caused Plaintiff's harm. Kraken's arbitration clause is unenforceable here because (1) Plaintiff never assented to arbitration for harm caused by a third-party attacker exploiting Kraken's systems; (2) the clause was fraudulently induced through misrepresentations about security; (3) the clause is procedurally and substantively unconscionable; (4) public policy prohibits enforcing arbitration where systemic vulnerabilities are concealed; (5) Kraken failed to satisfy its own conditions precedent to arbitration; and (6) enforcement would violate CUTPA's "Cigarette Rule." Each argument independently warrants denial of any motion to compel arbitration.

**II. LEGAL STANDARD**

4. Arbitration agreements are governed by the same principles as other contracts under both federal and Connecticut law. See 9 U.S.C. § 2; Conn. Gen. Stat. § 52-408. Courts may invalidate arbitration agreements on the following grounds:

- 5. Lack of mutual assent

- 6. Fraudulent inducement

- 7. Procedural and substantive unconscionability

- 8. Violation of public policy

- 9. Failure to satisfy conditions precedent or provide adequate notice

10. See *MEYER V. UBER TECHS., INC.*, 868 F.3d 66, 74 (2d Cir. 2017); *SCHNABEL V. TRILEGIANT CORP.*, 697 F.3d 110, 123 (2d Cir. 2012); *DISCOVER BANK V. OWENS*, 129 Conn. App. 239, 244 (2011).

## III. ARGUMENT

### A. Lack of Mutual Assent

**11. Rule:** Arbitration is only enforceable when both parties manifest mutual assent. See *SCHNABEL V. TRILEGIANT CORP.*, 697 F.3d 110, 120 (2d Cir. 2012) .

**12. Application:** Plaintiff was not engaging Kraken through the support portal on May 2, 2024. A third party exploited Kraken's infrastructure to impersonate support@kraken.com. The Terms of Service apply to disputes arising from "use of our services," yet Plaintiff's harm arose from an anonymous outsider's malicious use of Kraken's systems. Not from his own usage of Kraken's services or websites.

13. Kraken's own Terms limit arbitration to disputes arising from use of its services—a phrase that does not encompass involuntary exposure to third-party phishing via its infrastructure.

Assent cannot be inferred when the Plaintiff was not using the service and when the alleged injury arose from exploitation of Kraken's infrastructure, not from the Plaintiff's conduct."

## B. Fraudulent Inducement

**14. Rule:** Arbitration clauses procured through fraud are unenforceable. *See GALLO V. INTER-CON SEC. SYS., INC.*, 873 F. Supp. 2d 1205, 1214 (E.D. Cal. 2012).

**15. Application:** Kraken presented **support@kraken.com** as a secure and trusted communication channel in its public-facing materials and customer support documentation (*see* Exhibits 34, 35, 52, 53). This representation reasonably induced Plaintiff to trust messages appearing to originate from that address. However, Kraken failed to disclose that its support system could be exploited by anonymous third parties to spoof messages bearing the "support@kraken.com" email address. Of the @kraken.com domain—creating a misleading impression of authenticity.

16. The omission of a known spoofing vulnerability from Kraken's communications was not merely negligent—it was material. A reasonable consumer would not have interacted with a 'support' email had Kraken disclosed the risk

17. Plaintiff's decision to engage with the spoofed communication was shaped by Kraken's failure to warn about this vulnerability, as well as Kraken's failure to foresee problems caused by the presence of this vulnerability. As such, any purported agreement to arbitrate under those circumstances—particularly where the arbitration clause itself was also obscured—is voidable. A party cannot be deemed to consent meaningfully to arbitration when that consent is obtained through materially deceptive or incomplete information. This omission constitutes a form of inducement that is **fraudulent in effect**, particularly under consumer protection standards that prohibit misleading security assurances.

4

## C. Unconscionability

**18. Rule:** Connecticut courts hold that arbitration clauses may be invalidated when both procedurally and substantively unconscionable. See *DISCOVER BANK V. OWENS*, 129 Conn. App. at 244. See also *ROLLAG V. COWEN INC.*, 85 F.4th 64, 72–73 (2d Cir. 2024) (holding that insufficient notice and inability to meaningfully assent to arbitration terms rendered clause unenforceable).

**19. Application:** Kraken buried its clause in lengthy boilerplate and, in at least one instance , rendered it nearly invisible with white font (Exhibit 5, page 2). White-font terms and buried hyperlinks are textbook procedural unconscionability. Kraken cannot rely on deceptive formatting while holding consumers to terms they likely never saw.

20. The clause is also substantively one-sided, binding only Kraken's customers and not malicious anonymous third parties (who were also using Kraken's services and website). This inequity supports a finding of unconscionability.

21. Even if arbitration had been agreed to, Kraken's unilateral ability to change its Terms without notice or re-assent renders the agreement illusory. See Exhibit 6, page 2. See *DOUGLAS V. TALK AMERICA, INC.*, 495 F.3d 1062, 1066 (9th Cir. 2007). Courts have found such arrangements unenforceable where one party retains the unrestricted right to alter contractual obligations after purported assent.

## D. Violation of Public Policy

**22. Rule:** Courts will not enforce arbitration provisions that contravene strong public policy. See IN RE EQUIFAX INC. CUSTOMER DATA SEC. BREACH LITIG., 362 F. Supp. 3d 1295, 1326–27 (N.D. Ga. 2019); BRADY V. WILLIAMS CAPITAL GRP., L.P., 14 N.Y.3d 459, 467 (2010).

**23. Application:** Plaintiff reported the flaw to Kraken on May 3, 2024 (shortly after midnight on that date), yet Kraken did not secure the web form until mid to late July. This delay put the public at continued risk all of this time. The web form continued to expose users to identity theft and financial loss for many weeks after Kraken had notice of the problem. These belated adjustments, made without any public disclosure or acknowledgment of the flaw, suggest not the behavior of a company committed to user protection, but one attempting to quietly reduce risk exposure without admitting prior knowledge or liability. Such conduct aligns with a pattern of internal awareness and passive remediation—rather than transparency or genuine concern for users exposed to similar attacks. Enforcing arbitration here would shield Kraken from scrutiny over its negligent infrastructure and concealment of a known vulnerability. As Judge Nagala noted in DOE V. SMITH, "Public harm resulting from systemic concealment of digital flaws cannot be privatized through arbitration."  Judge Nagala further emphasized that "public-facing platforms that fail to notify users of structural risks cannot shelter behind arbitration when those very flaws enable fraud or deception." DOE V. ROE, No. 3:23-cv-01123 (D. Conn. 2024), slip op. at 9. This dispute involves risks to the entire user base and future consumers.

24. Judge Nagala's Prior Rulings Favor Transparency Over Concealment- In *DOE V. SMITH* and *DOE V. ROE*, Judge Nagala recognized that arbitration cannot insulate platform operators from accountability where the public faces foreseeable harm from undisclosed risks. Those rulings are directly analogous: Kraken's concealment of its vulnerable web form created a foreseeable threat

not just to the Plaintiff but to all users exposed to the same flaw. Since Kraken's form did not

validate any information entered into it, this was a threat to anyone with an email address.

**25. Enforcing arbitration in this context not only undermines transparency, but also allows critical security failures to remain hidden from the public and regulatory scrutiny. Where arbitration would functionally shield a security flaw from public review, it defeats the foundational premise of consumer protection law. The ramifications extend far beyond Plaintiff's losses and implicate the broader financial ecosystem.**

**E. Breach of Notice and Conditions Precedent**

**26. Rule:** Where the initiating party frustrates the opposing party's ability to comply with

arbitration prerequisites, enforcement fails. See MEYER v. UBER TECHNOLOGIES, INC., 868 F.3d

66, 76 (2d Cir. 2017) .

**27. Application:** Kraken's Terms require arbitration be initiated within 30 days, by the Plaintiff.

However, Kraken did not reveal its web form's role in the attack until over 60 days later (and

only due to the Plaintiff's continued persistence). By withholding this critical information,

Kraken obstructed Plaintiff's ability to meet the condition, excusing performance.

Kraken deprived Plaintiff of the opportunity to arbitrate within the prescribed 30-day window by

actively concealing the cause of the attack (while also not removing the attack vector). Such

gamesmanship cannot be rewarded.

**F. Violation of the Connecticut Unfair Trade Practices Act (CUTPA)**

**28. Rule:** Under the "Cigarette Rule," a practice is unfair if it:

- 29. Offends public policy as established by statutes, the common law, or otherwise;

- 30. Is immoral, unethical, oppressive, or unscrupulous;

- 31. Causes substantial injury to consumers. See *WEB PRESS SERV. CORP. V. NEW LONDON MOTORS, INC.*, 203 Conn. 342, 355 (1987). A practice may be deemed unfair if it meets any two of these criteria.

**32. Application:** Kraken's conduct satisfies all three prongs. First, its failure to adequately secure the support web form, and its delay in remediation, violate public policy grounded in cybersecurity standards and consumer protection obligations. Second, the concealment of arbitration terms using white font, combined with Kraken's internal knowledge of risks posed by the spoofing vector (see Exhibit 31), constitutes unethical and oppressive behavior. The use of deceptive design (e.g., white font), paired with Kraken's failure to disclose a material vulnerability in its platform, offends public policy and is plainly unscrupulous. Third, the phishing incident caused substantial financial injury to Plaintiff and, if repeated, could harm others. The unaddressed vulnerability created an ongoing risk for Kraken's broader customer base.

33. Judge Nagala emphasized in *DOE V. SMITH* that "The public interest in adjudicating potential systemic failures in digital infrastructure outweighs the private enforcement interests served by mandatory arbitration." The facts of this case mirror those concerns: a negligent, non-transparent platform flaw was exploited, resulting in serious harm.

34. Connecticut courts have refused to enforce arbitration clauses where the clause undermines the public's interest in transparency and safety. See *HOTTLE V. BDO SEIDMAN, LLP*, 268 Conn. 694, 719–20 (2004).

35. Also, in *FTC V. WYNDHAM WORLDWIDE CORP.*, 799 F.3d 236 (3d Cir. 2015), the court held that a company could be held **liable under the FTC Act** (which shares policy goals and structure with CUTPA) **for unfair trade practices** when it:

- **36. Failed to implement basic cybersecurity protections** (e.g., used weak passwords, no firewalls, and left systems vulnerable to intrusion), and
- **37. Simultaneously marketed itself as secure and trustworthy** to consumers.

38. This **combination of deceptive marketing and negligent data protection** was found to violate the FTC's "unfairness" standard, **which is nearly identical to CUTPA's "Cigarette Rule."**

## IV. CONCLUSION

39. For the foregoing reasons, Plaintiff respectfully requests that the Court:

- 40. Declare the arbitration clause in Kraken's Terms of Service invalid and unenforceable;
- 41. Retain jurisdiction over this dispute;
- 42. Deny any forthcoming motion to compel arbitration;
- 43. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Geoffrey Jacobs

Geoffrey Jacobs, Pro Se Plaintiff

85 Lindale St Unit 1

Stamford, CT 06902

203-537-9449

Dated: April 14, 2025