**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

GEOFFREY JACOBS,

               Plaintiff,

     v.

PAYWARD, INC.,
PAYWARD VENTURES, INC.,
PAYWARD INTERACTIVE, INC., d/b/a
KRAKEN,

              Defendants.

Case No. 3:25-cv-00567-SVN

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND .......................................................................... 1

   A.   Jacobs Agreed to Kraken's Terms of Service.......................................... 1

   B.   Kraken's Terms of Service Include an Arbitration Agreement. ........................................... 3

III.  ARGUMENT ................................................................................................ 4

   A.   Jacob's Claims are Subject to Binding Arbitration. ............................................ 5

      1.   The FAA applies and governs the Terms of Service. .................................... 5

      2.   The issue of arbitrability is subject to arbitration. ........................................ 6

      3.   In any event, Jacobs' claims are arbitrable. ................................................. 8

      4.   This action should be dismissed or stayed pending arbitration ................................... 13

   B.   Jacobs' Motion for Declaratory Judgment is Meritless and Improper. ........................... 13

      1.   Jacobs' Motion must be denied because it is procedurally improper........................... 14

      2.   Jacobs' Motion must be denied because it raises issues of arbitrability that the parties have delegated to the arbitrator. ........................................ 15

      3.   Jacobs' Motion should be denied because it relies on fictitious caselaw..................... 15

      4.   Jacobs' arguments are meritless. ................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Alfia v. Coinbase Global, Inc.*,
  2022 WL 3205036 (N.D. Cal. July 22, 2022)...........................................................................10

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)..................................................................................................................5

*Amaar Holding Inc. v. Travelers Cas. Ins. Co. of Am.*,
  No. 22–CV–05332–SJB, 2025 WL 251418 (E.D.N.Y. Jan. 17, 2025) ...................................14

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................................................................4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)...............................................................................................................5, 6

*Barrows v. Brinker Rest. Corp.*,
  36 F.4th 45 (2d Cir. 2022) ........................................................................................................6

*Binder v. Aetna Life Ins. Co.*,
  75 Cal. App. 4th 832 (Cal. Ct. App. 1999) ..............................................................................9

*Blast All, Inc. v. Hamilton Specialty Ins. Co.*,
  No. 3:19-CV-1237 (JAM), 2020 WL 4586504 (D. Conn. Aug. 10, 2020) ............................14

*Blau v. AT&T Mobility*,
  2012 WL 566565 (N.D. Cal. Feb. 21, 2012) (Breyer, J.) ......................................................10

*Brady V. Williams Capital Grp., L.P.*,
  14 N.Y.3d 459 (2010) .............................................................................................................19

*Chevron Corp. v. Donziger*,
  325 F. Supp. 3d 371 (S.D.N.Y. 2018).....................................................................................14

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003)....................................................................................................................5

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012)....................................................................................................................4

*Condee v. Longwood Mgmt. Corp.*,
  88 Cal. App. 4th 215 (Cal. Ct. App. 2001) ..............................................................................9

*Contec Corp. v. Remote Sol., Co.*,
  398 F.3d 205 (2d Cir. 2005)......................................................................................................6

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019)...................................................................................................5, 6

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ........................................................................................ 10, 11

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................................................. 4, 6

*DeVries v. Experian Info. Solutions, Inc.*,
2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ................................................................. 10

*Dohrmann v. Intuit, Inc.*,
823 Fed. Appx. 482 (9th Cir. 2020) ................................................................................. 10

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ................................................................................................ 10

*Emilio v. Sprint Spectrum L.P.*,
508 F. Appx 3 (2d Cir. 2013) .............................................................................................. 8

*In Re Equifax Inc. Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ............................................................................ 19

*Espejo v. S. Cal. Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (Cal. Ct. App. 2016) .................................................................. 9

*Ferris v. Amazon.com Servs.*,
LLC, No. 3:24-CV-304-MPM-JMV, 2025 WL 1122235 (N.D. Miss. Apr. 16,
2025) ........................................................................................................................................ 17

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .............................................................................................................. 8

*Friedman v. Sunrise Senior Living Mgmt.*,
Inc., No. 23 CIV. 8901 (GHW) (GS), 2025 WL 958550 (S.D.N.Y. Mar. 31,
2025) .......................................................................................................................................... 9

*Graf v. Match.com, LLC*,
2015 WL 4263957 (C.D. Cal. July 10, 2015) ............................................................... 10

*Grant v. City of Long Beach*,
96 F.4th 1255 (9th Cir. 2024), No. 4:23-CV-46, 2024 WL 329947 (S.D. Ga.
Jan. 29, 2024), appeal dismissed, No. 24-10368-C, 2024 WL 5389428 (11th
Cir. Oct. 21, 2024) ............................................................................................................... 16

*Green Tree Fin. Corp.-Ala v. Randolph*,
531 U.S. 79 (2000) ................................................................................................................ 4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S.Ct. 524 (2019) ............................................................................................................. 6

*Holick v. Cellular Sales of New York, LLC*,
802 F.3d 391 (2d Cir. 2015) ......................................................................................... 5, 6, 8

*HOTTLE V. BDO SEIDMAN, LLP*,
268 Conn. 694 (2004) ......................................................................................................... 20

*Houtchens v. Google LLC*,
    2023 WL 122393 (N.D. Cal. Jan. 6, 2023) ........................................................................... 10

*Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*,
    160 F.R.D. 452 (S.D.N.Y. 1995) ........................................................................................... 14

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) .................................................................................................. 13

*Kruse v. Karlen*,
    692 S.W.3d 43 (Mo. Ct. App. 2024) ..................................................................................... 16

*Local Union 97 v. Niagara Mohawk Power Corp.*,
    67 F.4th 107 (2d Cir. 2023) .................................................................................................. 11

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995) ................................................................................................................. 5

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) .......................................................................................... 9, 10, 11

*Miller v. Cincinnati Ins. Co.*,
    323 F. Supp. 3d 1253 (D.N.M. 2018) ................................................................................... 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................................... 4, 8

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014) ................................................................................................. 7

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ................................................................................................... 9

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) .......................................................................................... 6, 7, 8

*Park v. Kim*,
    91 F.4th 610 (2d Cir. 2024) .................................................................................................. 16

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) .................................................................................. 10

*Pingel v. Gen. Elec. Co.*,
    No. 3:14-CV-00632 CSH, 2014 WL 7334588 (D. Conn. Dec. 19, 2014) ....................... 18, 19

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ............................................................................................................. 18

*Robinson v. Macy's Inc.*,
    2025 WL 871643 (D. Conn. Mar. 20, 2025) .......................................................................... 6

*Schertzer v. Bank of Am., NA*,
    109 F.4th 1200 (9th Cir. 2024) ............................................................................................. 11

*Scott v. Federal Nat. Mortg. Ass'n*,
    2023 WL 6935586 (Me. Super. June 14, 2023)....................................................17

*Silva v. Schmidt Baking Distribution, LLC*,
    732 F. Supp. 3d 194 (D. Conn. 2024)................................................................8

*Singh v. Payward, Inc.*,
    2023 WL 5420943 (N.D. Cal. Aug. 22, 2023) ....................................7, 8, 9, 11, 19

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ..............................................................10

*The Cousteau Soc'y, Inc. v. Cousteau*,
    498 F. Supp. 3d 287 (D. Conn. 2020)................................................................6

*Thomas v. Blue Cross and Blue Shield Ass'n*,
    594 F.3d 823 (11th Cir. 2010) ........................................................................14

*Thomas v. Pangburn*,
    No. CV423-046, 2023 WL 9425765 (S.D. Ga. Oct. 6, 2023) ................................16

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir.
    2016) ..................................................................................................10

*Travelers Indem. Co. v. Northrup Grumman Corp.*,
    416 F. Supp. 3d 290 (S.D.N.Y. 2019)..............................................................14

*United States v. Hayes*,
    No. 2:24-CR-0280-DJC, 2025 WL 235531 (E.D. Cal. Jan. 17, 2025) ...................17

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003).............................................................................4

*Wells Fargo Advisors, LLC v. Sappington*,
    884 F.3d 392 (2d Cir. 2018)............................................................................6

**Rules and Statutes**

9 U.S.C. § 2................................................................................................4, 9

Connecticut Unfair Trade Practices Act ("CUPTA")
    Conn. Gen. Stat. §42-110a *et seq*..................................................................20

Fed. R. Civ. P. 57.........................................................................................14

Federal Arbitration Act ("FAA")
    9. U.S.C. §§1-16 ........................................................................................1

JAMS Rule 11(b) ...................................................................................7, 15, 16

Me. R. Civ. P. 11..........................................................................................17

## I.    INTRODUCTION

Plaintiff Geoffrey Jacobs ("Jacobs") agreed to Kraken's Terms of Service ("TOS") when he opened his Kraken account. The TOS contain an unambiguous arbitration provision, requiring binding arbitration of "any dispute arising from these Terms or your use of the Services." This dispute is subject to binding arbitration under the TOS because Jacobs' claims arise from his use of Kraken's Services.

The Federal Arbitration Act ("FAA") and United States Supreme Court precedent mandate that arbitration agreements be enforced according to their terms. Kraken seeks an order requiring Jacobs to abide by the TOS and submit his claims to binding arbitration before JAMS. Because the TOS require arbitration of "any dispute" and the governing JAMS Comprehensive Arbitration Rules provide that issues of arbitrability are to be decided by the arbitrator, the parties here clearly and unmistakably delegated arbitrability issues to the arbitrator. Upon finding an agreement to arbitrate, this Court possesses no further power to decide the issue of arbitrability and must order the parties to arbitration.

## II.    FACTUAL BACKGROUND

### A.    Jacobs Agreed to Kraken's Terms of Service.

Kraken is an online exchange that allows users to buy, trade, and sell cryptocurrencies. To open a Kraken account, a user must first assent to Kraken's TOS. (Declaration of Jeremy Davie ("Davie Decl."), ¶¶ 5–6). A screenshot of the "Create Account" interface, available at https://www.kraken.com/sign-up, is shown below:



The user sets a username and password, provides his or her email, checks a box indicating agreement to Kraken's TOS and Privacy Policy, and then clicks the large "Create account" button, which changes from grey to dark purple *only after* the TOS box is checked. (Davie Decl., ¶¶ 13–16).

Jacobs signed up for a Kraken account on February 27, 2021, and continues to maintain an active Kraken account today. (Davie Decl., ¶¶ 9–10). Jacobs checked a box indicating that he agreed to be bound by Kraken's TOS when he created his Kraken account. (Davie Decl., ¶ 17). The TOS were immediately and easily viewable by Jacobs during the sign-up process. As shown above, right next to the box that Jacobs clicked, there is a purple hyperlink stating, "Terms of Service." (Davie Decl., ¶¶ 6, 9–18, 22). Clicking on this hyperlink displays Kraken's TOS. (Davie Decl., ¶¶ 6, 13).

2

**B.      Kraken's Terms of Service Include an Arbitration Agreement.**

At all relevant times, the very top of Kraken's TOS have stated:

> PLEASE READ THESE TERMS OF SERVICE CAREFULLY. BY CLICKING THE "CREATE ACCOUNT" BUTTON OR BY ACCESSING OR USING THE SERVICES, YOU AGREE TO BE LEGALLY BOUND BY THESE TERMS OF SERVICE AND ALL TERMS INCORPORATED BY REFERENCE. (Davie Decl., Ex. B; *id.*, Ex. D).

This is immediately followed by a "Summary of Terms of Service" section, which highlights particular provisions of the TOS, including "Other Important Legal Terms." That section states:

> There are important legal terms provided below in the complete Terms of Service, including your **indemnification responsibilities**, our **limitation of liability** and **warranty disclaimers**, and your agreement to **arbitrate** most disputes. Please take the time to read these terms carefully. You can always contact us through support if you have any questions at **https://support.kraken.com**. (*Id.*, Ex. B (bold emphasis and hyperlinks in original); *see also id.*, Ex. D ("**Dispute Resolution** . . . "you are required to arbitrate disputes with us . . . ).

Kraken's TOS have also, at all relevant times, conspicuously included a section titled "Applicable Law; Arbitration" in bold, stating:

> PLEASE READ THE FOLLOWING PARAGRAPH CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH US AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF.
>
> <u>You and Payward agree to arbitrate any dispute arising from these Terms or your use of the Services</u>, except for disputes in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents. ARBITRATION PREVENTS YOU FROM SUING IN COURT OR FROM HAVING A JURY TRIAL . . . <u>You and Payward further agree: (a) to attempt informal resolution prior to any demand for arbitration; (b) that any arbitration will occur in San Francisco, California; (c) that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and (d) that the state or federal courts in San Francisco, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration.</u> Other than class procedures and remedies discussed below, the arbitrator has the authority to grant any remedy that would otherwise be available in court. Any dispute between the parties will be governed by these Terms and the laws of the State of California and applicable

3

United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction. Whether the dispute is heard in arbitration or in court, you and Payward will not commence against the other a class action, class arbitration or representative action or proceeding. (*Id.* Ex. B, § 23; *id.* Ex. D, § 14 (underline emphasis added)).

Notwithstanding the parties' agreement to arbitrate, on April 11, 2025, Jacobs filed this action in this Court. (*See* ECF No. 1). On April 15, 2025, Daniel Clarkson, Kraken's Assistant General Counsel, sent an email to Jacobs reminding him of the parties' agreement to arbitrate and demanding that he dismiss the action. (*See* April 15, 2025, Emails Between Daniel Clarkson and Geoffrey Jacobs, attached as **Exhibit 1**). Mr. Clarkson provided Jacobs with an excerpt of the arbitration agreement. (Ex. A). Jacobs acknowledged Kraken's position regarding arbitration, but has refused to arbitrate. (*Id.*).

## III.  ARGUMENT

The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003). As such, it "requires courts to enforce [arbitration] agreements . . . according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Arbitration agreements are to be read liberally to effectuate their purpose. *Moses*, 460 U.S. at 24; *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000).

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter*

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). Indeed, the FAA creates a "presumption of arbitrability" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62–3 (1995); *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015). A court should not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (concurring).

### A.    Jacob's Claims are Subject to Binding Arbitration.

Jacobs' claims against Kraken are arbitrable. Kraken's Motion should be granted because: (a) Jacobs agreed to the TOS and to arbitrate "any dispute" between the parties; (b) by the broad terms, all claims in Jacobs' Complaint are within the scope of the arbitration agreement; and (c) Jacobs has refused to arbitrate.

#### 1.    The FAA applies and governs the Terms of Service.

The FAA reaches to the outer limits of Congress's power to regulate under the Commerce Clause. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272–74 (1995). The FAA applies if a contract affects interstate commerce, or even if "in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003) (internal quotations omitted). Transactions "involving commerce" are to be construed broadly. *Allied-Bruce,* 513 U.S. at 268.

Jacobs' account with Kraken involves interstate parties and interstate commerce. Kraken, a Delaware corporation with a principal place of business in California, provides online cryptocurrency trading services to customers throughout the United States and internationally,

including Connecticut-resident Jacobs. (Compl., ¶ 5). The parties thus contemplated an interstate commerce connection. *See The Cousteau Soc'y, Inc. v. Cousteau*, 498 F. Supp. 3d 287, 311 (D. Conn. 2020) ("The internet has been routinely recognized by the Second Circuit as an instrumentality of interstate commerce.") (internal citations and quotations omitted). As such, the FAA governs the TOS and apply here.

### 2.    *The issue of arbitrability is subject to arbitration.*

In determining whether to compel arbitration, courts consider only "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015); *Robinson v. Macy's Inc.*, 2025 WL 871643, at *3 (D. Conn. Mar. 20, 2025). If the answer is yes to both questions, the court must enforce the agreement. *See Dean Witter Reynolds*, 470 U.S. at 218; *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). The party resisting arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022).

But even the two "gateway" issues of arbitrability are to be submitted to an arbitrator where there is "clear and unmistakable evidence" that the parties intended that result. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524 (2019); *AT&T Techs*, 475 U.S. at 649. An arbitration clause that commits "any" or "all" disputes to arbitration necessarily includes disputes as to arbitrability and satisfies the "clear and unmistakable" intent requirement. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). Additionally, when parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Wells Fargo Advisors, LLC v.*

*Sappington*, 884 F.3d 392, 396–98 (2d Cir. 2018) (holding that the incorporation of AAA rules, which provided that the arbitrator may rule on arbitrability issues, "clearly and unmistakably demonstrate[d] an intent to delegate to an arbitrator any questions of arbitrability").

The TOS requires the parties "arbitrate any dispute arising from these Terms or your use of the Services . . ."[1] The TOS language "any dispute" is "clear and unmistakable" evidence of the parties' intent to submit questions of arbitrability to the arbitrator. *PaineWebber Inc.*, 81 F.3d at 1199.

Additionally, the TOS incorporate the JAMS Rules. (Davie Decl., ¶ 21; *id.*, Ex. B, § 23; *id.*, Ex. D, § 14). The JAMS Rules, in turn, provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b), available at https://www.jamsadr.com/rules-comprehensive-arbitration/. By incorporating the JAMS Rules into the arbitration agreement of the TOS, the parties have "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator. This precise issue was recently addressed in *Singh v. Payward, Inc.*, 2023 WL 5420943 (N.D. Cal. Aug. 22, 2023), where the court granted Kraken's motion to compel arbitration pursuant to a materially identical TOS. The court held that the

---

[1] The "any" or "all" language does not show intent of the parties to delegate disputes to an arbitrator where a carveout in the agreement "at least arguably covers the present dispute," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). Here, the TOS provide for a limited carveout of "disputes in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents." This carveout of disputes involving intellectual property issues is not applicable here.

incorporation of JAMS rules into Kraken's arbitration agreement constituted clear and unmistakable evidence that the parties delegated questions of arbitrability to the arbitrator. *Id.* at *7–*8; *see Emilio v. Sprint Spectrum L.P.,* 508 F. Appx 3, 5 (2d Cir. 2013) (holding that the parties "clearly and unmistakably delegated questions of arbitrability to the arbitrator" where they agreed that "the then-applicable rules of JAMS will apply" to disputes); *Silva v. Schmidt Baking Distribution, LLC,* 732 F. Supp. 3d 194, 208 (D. Conn. 2024) ("[I]ncorporation of the JAMS rules in the [parties' agreement] clearly and unmistakably shows an intent to arbitrate gateway questions of arbitrability."). As a result, the threshold question of whether Jacobs' claims are subject to the arbitration agreement in the Terms of Service should be decided by an arbitral tribunal.

### 3. In any event, Jacobs' claims are arbitrable.

Even assuming *arguendo* that the parties had not delegated the issue of arbitrability to an arbitrator, the result would be the same. Because of the FAA's strong presumption in favor of arbitrability, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *PaineWebber Inc.*, 81 F.3d at 1198 (quoting *Moses H. Cone*, 460 U.S. at 24–25).

The FAA severely circumscribes a court's role in considering motions to compel arbitration—a court may only undertake two inquiries: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Holick*, 802 F.3d at 394. In the instant case, the answer to both of these questions is in the affirmative.

### a.  There is a binding arbitration agreement.

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Here, California state law applies because the TOS contain explicit California choice-of-forum and choice-of-law clauses and the contract's drafter—Kraken—is

located in California. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (finding that California state law applies where the contract's drafter was located in California): *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 227, 231 (2d Cir. 2016) (applying Washington state law where the agreement included a Washington choice of forum clause); *Friedman v. Sunrise Senior Living Mgmt.*, Inc., No. 23 CIV. 8901 (GHW) (GS), 2025 WL 958550, at *5 (S.D.N.Y. Mar. 31, 2025) (applying Delaware law where the agreement included a Delaware choice of law clause).

Under California law, the basis of a lawfully formed contract is "a manifestation of mutual assent." *See Binder v. Aetna Life Ins. Co.*, 75 Cal.App. 4th 832 (Cal. Ct. App. 1999). Even where the offeree does not have *actual* notice of the contract terms, they will still be bound by such terms if a "reasonably prudent person would be on *inquiry* notice of those terms and they unambiguously manifested assent to those terms." *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021) (citing Meyer, 868 F.3d at 74–75 (applying California law)). Inquiry notice is "actual notice of circumstances sufficient to put a prudent person upon inquiry." *Id.* (internal citations and quotations omitted). "A person is on inquiry notice of terms if they are presented in a clear and conspicuous manner." *Id.* Additionally, to satisfy its burden of establishing an agreement to arbitrate, Kraken need only submit a copy of its TOS. *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (Cal. Ct. App. 2016); *Condee v. Longwood Mgmt. Corp.*, 88 Cal. App. 4th 215, 218–19 (Cal. Ct. App. 2001). Kraken has done so. (Davie Decl., Ex. B; *id.*, Ex. D).

The arbitration provision in the TOS is a valid agreement to arbitrate. 9 U.S.C. § 2. Courts routinely enforce arbitration agreements between consumers and corporations, including where arbitration provisions are made available electronically or on an app or web page, and even if not physically signed. *See, e.g., Singh*, 2023 WL 5420943, at *3–*5 (holding that the process by which

users agreed to Kraken's Terms of Service—by checking a box next to a conspicuous hyperlink—provided reasonably conspicuous notice and manifested assent); *Meyer*, 868 F.3d at 74 (holding plaintiff assented to Uber's terms of service where interface included warning that user assented by creating an account and included a hyperlink); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2025) (finding plaintiff had assented to Terms of Service where hyperlink appeared directly below checkout button); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 705–09 (2d Cir. 2023) (reversing denial of motion to compel arbitration); *Dohrmann v. Intuit, Inc.*, 823 Fed. Appx. 482, 484 (9th Cir. 2020) (reversing denial of motion to compel arbitration); *Alfia v. Coinbase Global, Inc.*, 2022 WL 3205036, *2 (N.D. Cal. July 22, 2022) (holding, where "Plaintiff had to click a 'check box' next to the language 'I certify that I am 18 years of age or older, and I agree to the User Agreement and Privacy Policy,' with both agreements accessible via hyperlink," that plaintiff had "clear notice ... and took physical action to manifest his assent"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585–86 (N.D. Cal. 2020) (compelling arbitration where terms of service were presented via hyperlink); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (modified clickwrap sufficient to put plaintiff on notice); *Blau v. AT&T Mobility*, 2012 WL 566565, *1 (N.D. Cal. Feb. 21, 2012) (Breyer, J.) (compelling arbitration based on acceptance of terms on website); *Houtchens v. Google LLC*, 2023 WL 122393, **3–4 (N.D. Cal. Jan. 6, 2023) (compelling arbitration based on provision found in clickwrap terms of service agreed to when signing up for Fitbit accounts); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *8 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (agreement to clickwrap terms of service presented via hyperlink); *Graf v. Match.com, LLC*, 2015 WL 4263957, *4 (C.D. Cal. July 10, 2015); *DeVries v. Experian Info. Solutions, Inc.*, 2017 WL 733096, **5–6 (N.D. Cal. Feb. 24, 2017) (customers assented to website's terms and conditions that appeared in blue hyperlink above "order" button).

10

To sign up for a Kraken account, Jacobs had to affirmatively check a box, located directly next to a hyperlink to Kraken's TOS, stating that they agreed to be bound by Kraken's TOS. (Davie Decl., ¶¶ 6, 9–18). Such agreements are valid, binding, and consistently enforced. *See, e.g., Singh*, 2023 WL 5420943, at *3–*5; *Meyer*, 868 F.3d at 79–80  ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."); *Davitashvili*, 131 F.4th at 116–17 (finding mutual assent where plaintiffs had to click "checkout" button located directly above statement that by tapping button, plaintiffs agreed to the Terms and Conditions, which were linked directly below the button).

### b. Jacobs' claims fall directly within the scope of the arbitration agreement.

The arbitration provision in the TOS broadly requires Jacobs to arbitrate "any dispute arising from these Terms or your use of the Services." (Davie, Decl., Ex. B, § 23; *id.*, Ex. D, § 14). Kraken's TOS define "Services" broadly as "your access to and use of the websites and mobile applications provided by [Kraken] . . . and the trading and direct sales provided by [Kraken] as described in these Terms . . ." (*Id.*, § 1). In determining whether the dispute is within the scope of the arbitration clause, courts must assess "ordinary principles of contract interpretation" under state law to assess whether the "particular dispute is covered by the language to which the parties agreed." *Local Union 97 v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023). California courts "give effect to the mutual intent of the parties as it existed at the time of contracting" and infer the parties' intent, "if possible, solely from the written provisions of the contract." *Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1208 (9th Cir. 2024).

Jacobs argues that the TOS's arbitration clause does not extend to his claims arose from the actions of a third-party bad actor rather than Jacobs' "own usage of Kraken's services of

websites." (ECF No. 23, ¶¶ 11–13; ECF No. 24, ¶ 2; Compl. ¶¶ 8–10).[2] But Jacobs' claims are inextricably linked to his use of Kraken's Services. Jacobs—a registered Kraken user whose account remained open throughout the period relevant to his Complaint—asserts he was the victim of a phishing scam that resulted in the theft of his cryptocurrency by a third-party bad actor. Jacobs alleges the alleged scammer successfully deceived Jacobs by:

> (1) impersonating a Kraken employee,
> (2) using a web form available on Kraken's website that sent Jacobs an automated email from Kraken,
> (3) accessing and manipulating his Kraken account, including by creating withdrawal addresses to legitimize his affiliation with Kraken,
> (4) ultimately directing Jacobs to a fake Kraken website where he entered his real Kraken credentials.

In short, all of Jacobs claims relate to (1) Kraken's operation of its Services, such as its website and communications infrastructure, or (2) Kraken's representations about the security of its Services. (Compl., ¶¶ 1, 68–69, 215–216, 267–273, 312–319). Jacobs attempts to plead around the arbitration clause by characterizing the harm as arising from a third party's misuse of Kraken's infrastructure. (Compl., ¶¶ 8–10, 45–51, 166–172). However, the arbitration clause is not limited to disputes arising solely from Jacobs' affirmative use of the Services; it extends to "any dispute arising from these Terms or your use of the Services." (Davie Decl., Ex. B, § 23; *id.* Ex. D, § 14). The fact that a third party exploited a feature of Kraken's website to perpetrate a phishing attack does not sever the connection between Jacobs' claims and his use of Kraken's Services. The loss occurred only because Jacobs was a Kraken user and the phishing communications were arguably credible due to his relationship with Kraken and his use of its Services. (Compl., ¶¶ 1, 44–51, 70–

---

[2] While Jacobs labels his argument as a "Lack of Mutual Assent," the substance of the argument relates to the scope of the arbitration clause rather than Jacobs' assent to its terms.

97, 174–179, 267–291). As such, this dispute falls directly within the scope of the TOS's arbitration clause and Jacobs should be compelled to arbitrate.

### 4.    This action should be dismissed or stayed pending arbitration

Where all claims against a defendant must be submitted to arbitration, a court has a "discretionless obligation[]" to stay the proceedings pending arbitration. *Katz v. Cellco P'ship,* 794 F.3d 341, 345–47 (2d Cir. 2015). Jacobs' claims against Kraken are arbitrable and fall squarely within the scope of the parties' binding arbitration agreement. A stay of this case pending arbitration is appropriate because Jacobs' claims can be—and indeed must be—resolved through arbitration.

### B.    Jacobs' Motion for Declaratory Judgment is Meritless and Improper.

Anticipating Kraken's motion to compel arbitration, Jacobs makes several arguments regarding the TOS in his Fourth Amended Complaint, (ECF No. 32), Motion for Judicial Determination of Invalidity and Unenforceability of Arbitration Clause, (ECF No. 23), memorandum in support, (ECF No. 24), an amended Exhibit related to the Motion, (ECF No. 28), a declaration, (ECF. No. 29), a Request for Judicial Notice, (ECF No. 30), and a Memorandum in Opposition to *Anticipated* Motion to Compel Arbitration and Stay Discovery, (ECF No. 38).

Plaintiff's Motion for Judicial Determination of Invalidity and Unenforceability of Arbitration Clause (the "Motion"). (ECF No. 23) is essentially a request for declaratory judgment. Jacobs asks that this Court "[d]eclare the arbitration clause in Kraken's Terms of Service invalid and unenforceable." (Motion, ¶ 53). The Motion should be denied because (1) it is procedurally improper, (2) raises issues of arbitrability that the parties have "clearly and unmistakably designated to the arbitrator" (3) is permeated by fictitious caselaw, and (4) is meritless.

      *1.   Jacobs' Motion must be denied because it is procedurally improper.*

Motions for declaratory judgment are procedurally improper. Federal Rule of Civil Procedure 57—which governs actions for declaratory judgment—"contemplates that an action for a declaratory judgment is a civil action subject to the Federal Rules." *Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 455 (S.D.N.Y. 1995) (citing Fed. R. Civ. P. 57). As such, "a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment," and, if a party submits a motion for declaratory judgment, it must denied "because such a motion is inconsistent with the Federal Rules." *Id.*at 456 (emphasis in original); *see Blast All, Inc. v. Hamilton Specialty Ins. Co.*, No. 3:19-CV-1237 (JAM), 2020 WL 4586504, at *3, n.2 (D. Conn. Aug. 10, 2020) ("Although plaintiffs style their submission as a 'motion for declaratory judgment,' such a motion is not cognizable."); *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("The requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions, including the requirement that the action is commenced by filing a complaint.") (internal citations and quotations omitted); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 383 (S.D.N.Y. 2018) ("Insofar as the motion seeks a declaratory judgment, it is entirely without merit on procedural grounds alone" because declaratory relief "may not be sought . . .  by motion."); *Travelers Indem. Co. v. Northrup Grumman Corp.*, 416 F. Supp. 3d 290, 297 (S.D.N.Y. 2019) ("[A] party cannot simply make a motion for declaratory relief, but rather must bring an action for a declaratory judgment . . ."); *Amaar Holding Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 22–CV–05332–SJB, 2025 WL 251418, at *8 (E.D.N.Y. Jan. 17, 2025) (denying plaintiff's motion for declaratory judgment as improper); *Miller v. Cincinnati Ins. Co.*, 323 F. Supp. 3d 1253, 1256 (D.N.M. 2018) ("the Declaratory Judgment Act does not contemplate motions for declaratory judgment."). Accordingly, Jacobs'

attempt to file a motion for declaratory judgment is improper and should be denied.

> 2. *Jacobs' Motion must be denied because it raises issues of arbitrability that the parties have delegated to the arbitrator.*

Each of Jacobs' nine arguments about the validity and enforceability of the TOS and its arbitration clause are issues of arbitrability—issues that the parties have delegated to the arbitrator by the incorporation of JAMS rules in the TOS and the broad language of the TOS requiring "any dispute" be submitted to arbitration. *See supra* Section III.A.2. JAMS Rules make clear that threshold issues of arbitrability shall be submitted to the arbitrator. See JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b), available at https://www.jamsadr.com/rules-comprehensive-arbitration/ ("Jurisdictional and arbitrability disputes, including disputes over the *formation, existence, validity, interpretation or scope* of the agreement under which Arbitration is sought, and *who are proper Parties to the Arbitration*, shall be submitted to and ruled on by the Arbitrator.") (emphasis added). Each of Jacobs' nine arguments against the validity and enforceability of the arbitration agreement relate to either the scope or validity of the TOS, or to the correct party in arbitration, and are therefore issues of arbitrability that the parties have "clearly and unmistakably" delegated to the arbitrator.

> 3. *Jacobs' Motion should be denied because it relies on fictitious caselaw.*

Jacobs' Motion cites caselaw that does not exist—including four on which Jacobs relies heavily. Of the twenty opinions cited, seven could not be located by Kraken's counsel:

- *Doe v. Smith*, No. 3:22-cv-01987 (D. Conn. 2023)

- *Doe v. Roe*, No. 3:23-cv-01123 (D. Conn. 2024)

- *Doe v. Private Univ.*, No. 3:22-cv-00000-SVN (D. Conn. 2023)

- *West v. eBay, Inc.*, No. 3:22-cv-00597-SVN (D. Conn. Mar. 29, 2023)

- *Discover Bank v. Owens*, 129 Conn. App. 239 (2011);

- *Gallo v. Inter-Con Sec. Sys., Inc.*, 873 F. Supp. 2d 1205 (E.D. Cal. 2012);

- *Rollag v. Cowen Inc.*, 85 F.4th 64 (2d Cir. 2024).

Jacobs asserts that this Court authored those imaginary decisions, going so far as to refer to this Court by name twelve times and inserting ten quotations that he attributes to this Court. Jacobs cites to this opinions in paragraphs 2, 23, 24, 33, 39, 41, 42, 46, and 50 of his Motion.

Jacobs also appears to cite to fictitious cases in his subsequent filings related to this Motion. (*See* ECF No. 24 (citing *West v. Ebay, Inc.*, No. 3:22-cv-00597-SVN (D. Conn. 2023)); ECF No. 38 (citing *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F. Supp. 2d 581 (S.D.N.Y. 2013)).

Jacobs' use of fictitious caselaw warrants the denial of his Motion. *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."). Many courts have imposed dismissal of pleadings and monetary sanctions paid to the responding party on *pro se* parties that cite fictious caselaw. *See, .e.g.*, *Grant v. City of Long Beach*, 96 F.4th 1255, 1256–57 (9th Cir. 2024) (without determining source of two non-existent case citations and misrepresentation of thirteen cases, striking opening brief and dismissing appeal where opening brief "represents a material failure to comply with our rules"); *Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, at *4–*7 (S.D. Ga. Oct. 6, 2023) (recommending dismissal of plaintiff's complaint in part "as a sanction pursuant to Rule 11(b)" after he used citations that "appeared legitimate, conforming to expected citation conventions," but "simply did not exist"), report and recommendation adopted, No. 4:23-CV-46, 2024 WL 329947 (S.D. Ga. Jan. 29, 2024), appeal dismissed, No. 24-10368-C, 2024 WL 5389428 (11th Cir. Oct. 21, 2024); *Kruse v. Karlen*, 692 S.W.3d 43, 52, 54 (Mo. Ct. App. 2024) (sanctioning pro se party $10,000 in attorney's fees and granting motion to strike and dismissing appeal where

pro se party violated Missouri Rules of Appellate Procedure by submitting 22 fictitious case citations in his brief); *Scott v. Federal Nat. Mortg. Ass'n*, 2023 WL 6935586, at *4 (Me. Super. June 14, 2023) (for fabricated case citations and quotations in brief, sanctioning pro se plaintiff to pay defense counsel's reasonable attorney fees, costs, and expenses incurred for violating Maine Rule of Civil Procedure Rule 11 and to deter other litigants from "blindly" relying on AI-generated filings); *Ferris v. Amazon.com Servs.*, LLC, No. 3:24-CV-304-MPM-JMV, 2025 WL 1122235, at *2 (N.D. Miss. Apr. 16, 2025) (requiring pro se plaintiff to "pay the costs incurred by Defendant attributable to responding to [plaintiff's] fabricated citations"); *see also United States v. Hayes*, No. 2:24-CR-0280-DJC, 2025 WL 235531, at *14 (E.D. Cal. Jan. 17, 2025) (collecting cases involving the use of fictitious caselaw). As such, Jacobs' Motion should be denied, and Jacobs should be ordered to pay Kraken's cost incurred in responding to his fictitious case citations.

### 4.    *Jacobs' arguments are meritless.*

Even if Jacobs' Motion were proper and raised non-delegable issues, each of his arguments is without merit. Jacobs lists nine reasons for why this Court should declare the TOS's arbitration clause "invalid and unenforceable," and "[d]eny any forthcoming motion to compel arbitration." (ECF No. 23, ¶¶ 53, 55). The arguments include:

1.  The dispute is outside the scope of the arbitration clause;

2.  His agreement to the TOS was induced by alleged misrepresentations;

3.  The TOS are unconscionable;

4.  Enforcing the arbitration clause would violate public policy;

5.  Kraken allegedly breached conditions precedent to arbitration;

6.  The arbitration clause is invalid under the CUTPA's "Cigarette Rule";

7.  Jacobs' agreement to arbitrate is not with the entity named in the Terms of Service;

17

8. Jacobs was allegedly "never provided with a secure or documented opportunity to resolve the matter" through an informal dispute resolution process; and

9. The TOS fail to "identify the arbitral forum with reasonable certainty," and makes "no explicit reference to JAMS, AAA, or any specified" arbitral forum. (*See* ECF No. 23, ¶¶ 11–51; ECF No. 24; ECF No. 38).

### a. This dispute falls squarely within the scope of the arbitration agreement.

Jacobs argues that disputes with Kraken involving the actions of third parties do not fall under the scope of the arbitration agreement. Not so. The arbitration agreement applies to "any dispute arising from these Terms or your use of the Services." (Davie Decl., Ex. B, § 23). As discussed above, each of Jacobs' claims relate to (1) Kraken's operation of its Services, such as its website and communications infrastructure, or (2) Kraken's representations about the security of its Services. (Compl., ¶¶ 1, 68–69, 215–216, 267–273, 312–319). As such, this dispute is within the scope of the arbitration agreement.

### b. Kraken's alleged misrepresentations do not relate to the directly to the arbitration agreement.

Jacobs argues that he was fraudulently induced by Kraken to assent to the TOS by Kraken's alleged misrepresentations about the security of its platform. Jacobs' argument does not specifically relate to the arbitration agreement, but rather to the TOS generally—he essentially argues that he would not have signed up for a Kraken account and agreed to the TOS had he known that the representations he mentions were false. The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Pingel v. Gen. Elec. Co.*, No. 3:14-CV-00632 CSH, 2014 WL 7334588, at \*5 (D. Conn. Dec. 19, 2014) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)). Rather, "in passing upon a § 3

application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate" *Id.*

### c.   The arbitration agreement is not unconscionable.

Jacobs' next argues that the arbitration clause is unconscionable. In support of his arguments, Jacobs cites two cases that do not exist. *See* ECF No. 23, ¶ 18 (citing "*DISCOVER BANK V. OWENS*, 129 Conn. App.at 244" and "ROLLAG V. COWEN INC., 85 F.4th 64, 72–73 (2d Cir. 2024)"). Jacobs argues that the arbitration clause is "in lengthy boilerplate," "nearly invisible white font," and "substantively one-sided" because it only binds Kraken's customers, not malicious anonymous third parties. These arguments are meritless. As shown above, the TOS provide conspicuous notice that it requires users to arbitrate. The clause is in plain English. It is written in black font, not white. The arbitration clause is not one sided – it requires both parties, Kraken and its users, to arbitrate any disputes. Kraken cannot bind malicious third parties to its TOS without their assent. The clause is not unconscionable. *See Singh*, 2023 WL 5420943, at *5– *6.

### d.   Enforcing the arbitration agreement would not violate public policy.

Jacobs next argues that the enforcing the arbitration agreement would violate public policy, citing *In Re Equifax Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1326–27 (N.D. Ga. 2019) and *Brady V. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 467 (2010)," and two fictitious cases, "*DOE V. ROE*, No. 3:23-cv-01123 (D. Conn. 2024)" and "*Doe v. Smith*." *Equifax* does not mention the awards "arbitration" or "public policy" and holds no support for Jacobs' assertion. Similarly, *Brady* does discuss the public policy defense, but only in the context of whether an arbitration clause's "fee-sharing arrangement" violated public policy.

Further, Jacobs does not point to any public policy that the arbitration clause violates—only that the arbitration of this matter would "allow[] critical security failures to remain hidden from the public." This argument is inconsistent with Jacobs' statements that Kraken remediated the alleged security failure. (Compl., ¶ 50).

### e. Jacobs was not obstructed from initiating arbitration.

Jacobs argues that Kraken obstructed his ability to initiate arbitration "within 30 days," by "concealing the cause of the act." (ECF No. 23, ¶ 27). This argument is based on a misreading of the TOS. The TOS only require that the parties notify each other of disputes within 30 days, not initiate arbitration. In any event, Jacobs is in no way excused from performing his duty to arbitrate disputes under the TOS simply because he did not know all of the details about the attack.

### f. The CUTPA cannot invalidate the arbitration agreement.

Jacobs argues that the Connecticut Unfair Trade Practices Act ("CUTPA") invalidates the arbitration agreement. He provides no basis for this argument. The case to which Jacobs cites, "*HOTTLE V. BDO SEIDMAN, LLP*, 268 Conn. 694, 719–20 (2004)," does not support his assertion. The court in that case applies New York law, does not mention the CUTPA, and holds that the arbitration clause at issue is "valid and enforceable." *Id.* 719–23. The CUTPA is a consumer protection act that provides a private right of action to persons injured by "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. St. § 42–110b(a). Jacobs has already asserted a CUTPA claim in his Complaint. (Compl., ¶¶ 332–53). He provides no legal basis for his assertion that he is entitled to declaratory judgment that the arbitration agreement is invalid or unenforceable under the CUTPA, and no factual basis for his assertions that any of Kraken's practices violate the CUTPA.

20

**g.  The TOS make the binding parties clear.**

Jacobs argues that he was never provided "clear notice of the true identity" of the Kraken entity to he was bound. The TOS make clear it is binding between Jacobs and "Payward, Inc. and its wholly owned subsidiaries." (Davie Decl., Ex. B, § 1).

**h.  Jacobs communicated with Kraken's in-house legal counsel prior to filing this lawsuit.**

Jacobs argues that Kraken does not provide a "secure or documented opportunity to resolve the matter internally." Not so. The TOS make clear that the Notice of arbitration should be sent to the listed Kraken email address. (*See* Davie Decl., Ex. B, § 23 ("Notice to Payward shall be sent to legal@kraken.com")). Jacobs' own Complaint exhibits document some of his communications with Kraken in-house legal counsel about this dispute. (Compl., Ex. 31).

**i.  The TOS specify JAMS as the arbitral forum.**

Finally, Jacobs argues that the TOS fail to provide a procedural forum. Again, not so. The TOS clearly provide that JAMS is the applicable forum. (*See* Davie Decl., Ex. B, § 23 (" . . . arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS . . .")).

In short, while Jacobs' Motion is procedurally improper, potentially subject to sanctions, and the issues raised must be delegated to an arbitrator per the TOS, each argument contained in Jacobs' Motion is without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, Kraken requests that this Court (1) grant its Motion and compel Jacobs to submit his claims to arbitration before JAMS, (2) stay this matter pending arbitration, and (3) award Kraken attorneys' fees and costs.

Dated: May 12, 2025                    Respectfully submitted,

                                        PULLMAN & COMLEY LLC

                                        */s/ Timothy G. Ronan*
                                        Timothy G. Ronan
                                        850 Main Street
                                        P.O. Box 7006
                                        Bridgeport, CT 06601-7006
                                        T: 203-330-2000
                                        F: 203-576-8888
                                        tronan@pullcom.com

                                        NORTON ROSE FULBRIGHT US, LLP

                                        /s/ *Eric D. Martin*
                                        Eric D. Martin (*pro hac vice*)
                                        Missouri Bar No. 47558
                                        7676 Forsyth Boulevard, Suite 2230
                                        St. Louis, Missouri  63105
                                        Telephone: (314) 505-8800
                                        Facsimile: (314) 505-8899
                                        Eric.Martin@nortonrosefulbright.com

                                        *Attorneys for Defendants*