**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**GEOFFREY JACOBS**,

Plaintiff,

v.

**PAYWARD, INC., PAYWARD VENTURES, INC., PAYWARD INTERACTIVE, INC. d/b/a KRAKEN**,

Defendants.

Case No. 3:25-cv-00567-SVN

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

1. Plaintiff Geoffrey Jacobs respectfully submits this Memorandum in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings. The motion should be denied because each of the following independent and overlapping legal defenses remain unrebutted. Each unrebutted defense independently bars arbitration under FAA § 2, and Kraken's silence operates as waiver under binding Second Circuit law.

   a) **Fraudulent inducement**—Plaintiff was misled by Kraken's false representations of SOC 2 compliance and security standards;

   b) **Public policy violation under CUTPA**, which bars enforcement of arbitration clauses that insulate deceptive conduct;

   c) **Waiver by selective enforcement**—Kraken has resolved materially similar disputes outside of arbitration (e.g., BBB, reinstatements);

1

> d) **Material deviation from JAMS dispute resolution procedures**, making the clause illusory;
>
> e) **Procedural breach**—Kraken's delay in disclosing the phishing details rendered arbitration contractually unavailable;
>
> f) **Delegation clause failure**—no "clear and unmistakable" agreement to arbitrate gateway issues exists where formation itself is challenged;
>
> g) **Lack of scope**—this case arises from a third party's use of Kraken's platform, not Plaintiff's use;
>
> h) **Structural bias and access failure**—the JAMS forum is inaccessible and procedurally unavailable to pro se claimants under these facts.

2. Each of these grounds is legally sufficient on its own. Together, they render arbitration both **unenforceable and improper under the FAA.**

## I. INTRODUCTION

3. Contrary to Kraken's assertion, this case is not about a dispute "arising from Plaintiff's use" of their services. This is a dispute concerning Kraken's systemic failure to secure the infrastructure they market as SOC 2-certified and "battle-tested." A third party exploited a Kraken vulnerability and impersonated Kraken itself, gaining access to Plaintiff's funds. Kraken now seeks to avoid judicial scrutiny by retroactively invoking a boilerplate arbitration clause—a clause Plaintiff was fraudulently induced into accepting, and which Kraken has failed to enforce uniformly.

## II. LEGAL STANDARD

4. A party moving to compel arbitration bears the burden of proving: (1) the existence of a valid agreement to arbitrate, and (2) that the claims fall within the scope of that agreement. See *Meyer v. Uber Techs.*, 868 F.3d 66, 73 (2d Cir. 2017). Where a party challenges the very formation of the agreement—including assent, fraud, unconscionability, or public policy—the court must decide those issues unless clear and unmistakable delegation exists. See *Rent-A-Center, West v.*

*Jackson*, 561 U.S. 63 (2010); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

**III. ARGUMENT**

**A. KRAKEN HAS NOT PROVEN THE EXISTENCE OF A VALID, ENFORCEABLE ARBITRATION AGREEMENT**

**1. LACK OF MUTUAL ASSENT DUE TO FRAUDULENT INDUCEMENT**

5. Kraken fails to rebut that Plaintiff was induced to click through its Terms of Service based on fraudulent, materially misleading security representations. Kraken's public representations— including its SOC 2 Type II certification and security marketing—played a critical role in Plaintiff's reliance. These statements were false and misleading, given Kraken's disregard for NIST 800-177r1 and its vulnerable support infrastructure. As such, Plaintiff's assent was not knowing or voluntary. See Restatement (Second) of Contracts §§ 164, 169.

6. Defendant's Motion ignores this core argument. They address only the superficial mechanics of assent (clickwrap), without confronting the underlying fraud.

7. This is not a challenge to performance or breach—it is a challenge to whether mutual assent ever occurred due to deceptive inducement, scope exclusions, and procedural barriers.

8. Clickwrap assent alone is insufficient to establish enforceability when assent was induced by deception, or when the clause later invoked was selectively enforced.

9. Even under California law, fraudulent inducement, material breach, and procedural unconscionability are valid defenses to contract enforcement—even where clickwrap assent is

proven. See S*oliman v. Subway*, 999 F.3d 828, 834–35 (2d Cir. 2021) (declining to enforce arbitration clause under California law due to procedural and substantive unconscionability, despite assent).

## 2. MATERIAL BREACH AND FRUSTRATION OF PURPOSE

10. Even if an agreement to arbitrate had initially existed, Kraken breached its obligations by:

a) Failing to maintain secure infrastructure consistent with industry standards (NIST 800-177r1, ISO 27001, SOC 2);

b) Allowing unauthorized use of its automated systems (support form auto-emails);

c) Providing no meaningful opportunity for informal resolution.

11. Kraken's arbitration clause was not fairly presented, especially in connection with security-related harms. These breaches vitiated any arbitration obligation. A party who materially frustrates the purpose of an agreement cannot invoke it. See *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1324 (N.D. Ga. 2019).

## B. THE SCOPE OF THE ARBITRATION CLAUSE DOES NOT COVER PLAINTIFF'S CLAIMS

12. Kraken mischaracterizes this dispute as one "arising from Plaintiff's use of its services." That is not accurate. Plaintiff's claims arise from:

a) A third-party attacker's exploitation of Kraken's own support infrastructure, not Plaintiff's own use;

b) Kraken's negligent design and insecure delivery of automated emails, not any transactional use of the exchange;

c) Misrepresentations about security practices made to the public—not conduct governed by the user agreement.

13. This matter arises not from Plaintiff's use of Kraken, but from Kraken's own public-facing negligence and the actions of third parties which Kraken enabled. The clause is overbroad and ambiguous, and courts must construe such provisions against the drafter. See *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019).

14. Because Plaintiff's injury did not arise out of his use of Kraken's services but instead from a third party's unauthorized/anonymous use and Kraken's systemic failure to prevent it, the Terms of Service — including its arbitration clause — are inapplicable to this dispute.

15. **The premise that Kraken's terms of service govern the account holder's "use" of Kraken's services and website is not a "meritless" claim**, as the Defendant claims it is. That is exactly what Kraken's terms of service states. Verbatim. "Please read these Terms of Service (including all Annexes, "Terms") carefully, as they are binding and govern your use of our services, and our websites (including kraken.com, and pro.kraken.com), and mobile applications through which you access our services" That is taken directly from page 2 of 75 of Kraken's terms of service.

16. What happened to Plaintiff on May 2, 2024 was not due to "his" use of Kraken's services and/or website. It was due to someone else's use of Kraken's services and website. Therefore,

Kraken's terms of service do not apply here. Accordingly, no agreement to arbitrate this particular claim exists here either.

## C. DELEGATION IS INAPPLICABLE WHERE CONTRACT FORMATION IS CHALLENGED

17. Kraken's reliance on JAMS Rule 11(b) assumes Plaintiff clearly and unmistakably agreed to delegate arbitrability. But that assumption collapses where the arbitration clause was fraudulently induced. Delegation clauses must themselves meet the same formation standards as contracts— and no such assent occurred here See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (court must decide arbitrability unless parties clearly and unmistakably agreed otherwise).

Delegation is only enforceable where both (1) a valid contract exists and (2) the delegation was clearly and unmistakably agreed to.

18. Reliance on JAMS Rule 11(b) is circular—Kraken assumes mutual assent to JAMS rules and their delegation provision, yet Plaintiff's central claim is that no valid assent occurred because the arbitration clause was procured through deceptive representations regarding security. **JAMS Rule 11(b) itself requires that the arbitration agreement be valid**, which is precisely what's contested. That circularity undermines Kraken's reliance on it.

19. Where contract formation is disputed, including delegation provisions embedded within the alleged contract, those gateway questions must be decided by the Court. See *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010) (delegation cannot be enforced unless there is a valid agreement to delegate).

20. While Defendants cite *PaineWebber and Contec* for the proposition that incorporation of JAMS rules implies delegation, that principle presumes a valid underlying agreement. As the Second Circuit clarified in *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014), the presence of a carve-out or ambiguity may defeat delegation. Plaintiff's argument is not merely about scope—it is that there was no valid assent at all due to fraudulent inducement and public misrepresentation of security practices. Where formation is disputed, courts—not arbitrators—retain exclusive jurisdiction. See *Rent-A-Center*, 561 U.S. at 70 n.1.

Accordingly, any argument based on the supposed "clear and unmistakable" delegation fails at the threshold. The delegation clause falls with the arbitration clause, and the Court—not an arbitrator—must resolve arbitrability.

21. If fraud, lack of assent, or unconscionability affected the delegation clause, a court must resolve those issues before referring anything to arbitration. See *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), at page 70, and *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), at page 944 .

   a) Fraudulent inducement was specific to arbitration clause, not merely the TOS overall.

   b) Courts must decide contract formation and public policy validity before delegation can apply.

22. This then triggers the court's duty to decide formation issues first, including:

   a) Mutual assent,

   b) Public policy bars (e.g., CUTPA),

c) Unconscionability.

d) Fraudulent inducement of the arbitration clause itself

23. Here, Plaintiff's formation challenges are specific and substantiated, not mere procedural quibbles. The alleged delegation provision is thus inoperative. This is due to Plaintiff never having valid agreement in the first place because he was fraudulently induced into accepting it based on deceptive security claims.

24. Delegation applies only if there is a valid agreement in the first place. As both Rent-A-Center and First Options make clear, courts—not arbitrators—must decide whether fraud or lack of assent vitiates the agreement.

25. Defendants have not pointed to any clear and unmistakable delegation clause within the clickwrap agreement. The mere incorporation of JAMS rules is insufficient in the face of a contested formation.

26. See JAMS Rule 11(b); but see *First Options, 514 U.S.* at 944 (delegation presumes valid formation, which Plaintiff disputes here).

27. To the extent Kraken disputes the procedural form of Plaintiff's prior motion under Rule 57, Plaintiff clarifies that the operative issue is not the vehicle but the relief sought. The present Opposition, filed in direct response to Defendants' Motion to Compel Arbitration, squarely raises threshold contract formation and enforceability issues under the FAA, and is fully proper under controlling law.

## IV. ARGUMENTS UNADDRESSED BY DEFENDANT, GROUNDS FOR DENIAL

28. In their Motion to Compel Arbitration, Defendants fail to rebut or even acknowledge numerous core legal theories raised in Plaintiff's prior filings—specifically, the Motion to Invalidate the Arbitration Clause (ECF No. 23) and supporting Memorandum (ECF No. 24). Each of the following unrebutted arguments constitutes an independent ground for denying arbitration, and Defendants' silence on them operates as waiver under Second Circuit precedent. See *Jackson v. FedEx*, 766 F.3d 189, 197 (2d Cir. 2014); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 (S.D.N.Y. 1997).

### A. FRAUDULENT INDUCEMENT REMAINS UNADDRESSED (ECF NO. 24 AT 1–2, ¶3)

29. Plaintiff alleged that Kraken fraudulently induced assent by publicly marketing its platform as SOC 2-certified and "battle-tested," while knowingly deploying vulnerable infrastructure in violation of NIST 800-177r1 and related standards. These representations directly informed Plaintiff's decision to create an account. Defendants' motion addresses only clickwrap assent and makes no attempt to refute the specific fraud-based formation challenge.

30. Courts have routinely held that fraudulent inducement invalidates arbitration clauses. See *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834–35 (2d Cir. 2021) (affirming that procedural unconscionability and fraud can render an arbitration clause unenforceable even when assent via clickwrap exists); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (fraudulent inducement affecting the arbitration clause specifically must be resolved by the court).

9

**B. CUTPA-BASED PUBLIC POLICY VIOLATION IGNORED (ECF NO. 24 AT 2, ¶7)**

31. Plaintiff's brief invoked the Connecticut Unfair Trade Practices Act ("CUTPA") to argue that enforcing arbitration would contravene Connecticut's public policy under the Cigarette Rule, particularly when it would shield deceptive conduct from judicial review. Defendants do not cite CUTPA, respond to Plaintiff's reliance on *Hottle v. BDO Seidman, LLP*, 268 Conn. 694 (2004), or contest Plaintiff's argument that CUTPA renders the clause unenforceable under FAA § 2.

32. State public policy is a recognized basis for refusing to enforce arbitration under the FAA. See *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Hottle*, 268 Conn. at 726–27 (refusing to enforce arbitration clause where it would violate CUTPA's public protections).

**C. WAIVER BY SELECTIVE ENFORCEMENT IS NOT CONTESTED (ECF NO. 24 AT 2, ¶9)**

33. Plaintiff documented Kraken's selective enforcement of arbitration through examples including BBB complaints and direct customer refunds or reinstatements. This conduct undermines Kraken's position that arbitration is mandatory and uniformly applied. Defendants' motion is silent on this issue and fails to address the governing legal standard from *La. Stadium & Exposition Dist. v. Merrill Lynch*, 626 F.3d 156 (2d Cir. 2010).

34. See also *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995) (waiver may be found where a party engages in inconsistent conduct or fails to invoke arbitration promptly).

## D. MATERIAL DEVIATION FROM JAMS PROCESS IS UNREBUTTED (ECF NO. 24 AT 2–3, ¶9)

35. Plaintiff alleged that Kraken materially deviated from its Terms of Service by routing dispute communications through an insecure, unauthenticated support portal rather than the promised JAMS process. This deviation rendered the clause illusory and unenforceable. Defendants do not address this deviation or its legal consequences, nor do they explain the contradiction between the platform's stated and actual resolution pathways.

36. Material deviation from the agreed dispute resolution method may void an arbitration clause. See *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1324 (N.D. Ga. 2019) (holding that deviations and defects in arbitration presentation and process can render a clause unenforceable).

## E. PROCEDURAL BREACH AND ARBITRATION INFEASIBILITY REMAIN UNCHALLENGED (ECF NO. 24 AT 2–3, ¶9)

37. Plaintiff alleged that Kraken's failure to disclose the nature of the phishing attack within the 30-day arbitration window constituted a procedural breach of a condition precedent. Kraken offered no response or justification for this delay and presented no affidavit disputing Plaintiff's timeline. The uncontested record shows that arbitration was rendered unavailable through Kraken's own conduct.

38. Procedural breaches that frustrate a party's ability to invoke arbitration may void the clause. See *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *Moses H. Cone Mem'l*

11

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (procedural defaults can preclude arbitration).

## F. DELEGATION CLAUSE CHALLENGE WAS NOT ADDRESSED (ECF NO. 24 AT 3, ¶10)

39. Plaintiff specifically challenged the enforceability of the delegation clause, arguing that any delegation to JAMS was invalid because the arbitration clause itself was fraudulently induced. Defendants fail to identify any "clear and unmistakable" delegation provision in the clickwrap TOS and rely instead on circular incorporation of JAMS rules.

40. The Supreme Court has emphasized that delegation clauses require "clear and unmistakable" evidence of agreement. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-A-Center*, 561 U.S. at 70 n.1 (delegation fails if contract formation is disputed).

## G. STRUCTURAL BIAS AND FORUM INACCESSIBILITY ARE UNDISPUTED (ECF NO. 24 AT 3, ¶10)

41. Plaintiff argued that the designated arbitration forum (JAMS) is structurally inaccessible to pro se phishing victims, noting both cost barriers and Kraken's refusal to initiate arbitration even when prompted. Defendants do not address the pro se burden, the procedural inaccessibility of JAMS, or the inconsistency between Kraken's advertised process and its actual conduct.

42. Arbitration clauses have been invalidated where cost, accessibility, or forum bias creates unfairness. See *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1248–

49 (9th Cir. 1994) (arbitration clause invalidated due to biased and inaccessible

forum); *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83,

110–12 (2000) (unfair forum structure renders arbitration unconscionable).

## H. SCOPE MISCHARACTERIZATION AVOIDS PLAINTIFF'S FORMATION-BASED CHALLENGE (ECF NO. 24 AT 1, ¶2)

43. Plaintiff clarified that this dispute arises from a third-party attacker's misuse of Kraken's

public infrastructure, not from Plaintiff's own "use" of Kraken's services. Kraken inaccurately

framed this issue as a mere scope dispute under the FAA, ignoring the threshold formation

problem.

44. Courts must resolve questions of contract formation before addressing scope. See

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (holding that

courts—not arbitrators—must decide whether an agreement to arbitrate was ever

formed).

45. These unrefuted arguments reflect well-developed legal theories and factual assertions, each

of which goes to the formation, enforceability, and public validity of the arbitration clause. As

this Court held in *Orellana v. Macy's*, 2023 WL 6629414, at *6 (D. Conn. Oct. 11, 2023)*, "a

party's failure to respond to a well-developed argument is typically treated as waiver or

concession." Accordingly, Defendants' failure to address these points justifies denial of their

motion as a matter of law.

## V. LEGAL STANDARD: ARGUMENTS NOT REBUTTED ARE WAIVED

46. Defendants' silence on the above issues operates as waiver. See *Jackson v. Federal Express*, 766 F.3d 189, 197 (2d Cir. 2014) ("[T]he failure to oppose an argument constitutes a concession."); *Anti-Monopoly, Inc. v. Hasbro, Inc*., 958 F. Supp. 895, 907 (S.D.N.Y. 1997) (same).

47. Given that these arguments go to contract formation, enforceability, public policy, and structural defects, they cannot be delegated to arbitration and remain properly before this Court. The Motion should therefore be denied.

## VI. THE SINGH DECISION IS INAPPOSITE AND OFFERS NO SUPPORT FOR KRAKEN

48. Defendants rely on *Singh v. Payward, Inc*., 2023 WL 5420943 (N.D. Cal. Aug. 22, 2023), to argue that Kraken's arbitration clause has already been upheld. But Singh is both factually and legally distinguishable.

49. In Singh, the plaintiff challenged Kraken's management of his own account (e.g., account freezes or closures), not a third-party phishing attack. There were no allegations of impersonation, public infrastructure vulnerabilities, or systemic security failures. Singh never addressed fraud, public misrepresentation, or third-party attacks. Mutual assent was undisputed. That alone makes it inapplicable here

50. Here, Plaintiff's claims arise from a phishing attack carried out through Kraken's public-facing infrastructure—specifically, its unauthenticated support form. The attacker used Kraken's own systems to gain access, without Plaintiff's initiation. This distinguishes the case on formation, scope, and causation grounds.

14

51. Singh also did not involve allegations of fraudulent inducement, deceptive security marketing, or violations of SOC 2 or CUTPA. Mutual assent was not contested in Singh, and the plaintiff did not argue waiver, procedural breach, or selective enforcement—each of which is central here.

52. Moreover, Singh was decided in the Northern District of California, where courts are generally more receptive to tech arbitration clauses. This case is before the District of Connecticut, where consumer protection and public policy play a stronger role in invalidating deceptive or procedurally defective clauses.

53. Because the facts, legal theories, and procedural posture differ substantially, Singh has no persuasive or precedential weight in this matter and cannot justify compelling arbitration.

## VII. KRAKEN'S DELAY BREACHED A CONDITION PRECEDENT TO ARBITRATION AND TRIGGERS EQUITABLE ESTOPPEL

54. Kraken's failure to disclose or explain the nature of the phishing incident within the thirty-day window required for arbitration initiation under its Terms of Service constitutes a breach of a condition precedent to arbitration. The agreement imposed deadlines not only on users, but also implied duties of transparency and cooperation necessary to make arbitration practicable. By remaining silent for over 60 days—during which Plaintiff had no meaningful way to identify what happened, who did it, or how—it became impossible for Plaintiff to pursue arbitration within the contractually defined period.

55. As the Supreme Court made clear in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), courts may not compel arbitration when procedural prerequisites are

unmet. Similarly, in *Preston v. Ferrer, 552 U.S.* 346, 353 (2008), the Court reiterated that arbitration "must be denied" where procedural defects frustrate the enforceability of the clause. Kraken's failure to provide timely notice or access to critical facts, even after being asked, made arbitration both untimely and illusory.

56. Kraken is further equitably estopped from invoking the arbitration clause under these circumstances. A party that frustrates or disables performance of a contractual provision cannot later seek to enforce it. See In re *Equifax Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1324 (N.D. Ga. 2019) (denying arbitration where defendant's own security failures and delays made meaningful compliance impossible). Having concealed the facts necessary to trigger Plaintiff's arbitration rights, Kraken cannot now benefit from a clause it made impossible to use.

57. This procedural defect is not merely technical—it destroyed Plaintiff's ability to pursue any relief in arbitration and further supports denial of the motion. Kraken offers no explanation for this delay and does not contest Plaintiff's timeline. The uncontested record shows that Kraken failed to provide key details until long after the 30-day arbitration window had expired. This unanswered fact is independently sufficient to deny the motion.

## VIII. KRAKEN'S FAILURE TO REBUT PLAINTIFF'S CENTRAL LEGAL ARGUMENTS WARRANTS DENIAL OF ITS MOTION

58. To the extent any past filings referenced incorrect case citations, Plaintiff respectfully clarifies that such citations are not relied upon in this opposition. Every argument presented herein rests on verifiable authority, such as *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), and *Hottle v. BDO*

*Seidman*, 268 Conn. 694 (2004). These authorities remain unrebutted and dispositive regardless of any clerical citation issue.

59. Kraken's failure to respond to Plaintiff's fraudulent inducement, waiver by selective enforcement, public policy violations under CUTPA, and procedural breach of the arbitration agreement constitutes waiver. These are not factual quibbles—they are threshold legal bars to enforcement of arbitration. These unrefuted arguments are gateway issues of contract formation and enforceability. As Judge Sarala V. Nagala explained in *Orellana v. Macy's*, 2023 WL 6629414, at *6 (D. Conn. Oct. 11, 2023):

"In this District, a party's failure to respond to a well-developed argument is typically treated as waiver or concession. When a litigant entirely fails to address arguments that go to the heart of a dispositive motion, the court may deem those arguments conceded." and *Jones v. Cuomo*, 542 F. Supp. 3d 207, 215 (S.D.N.Y. 2021), this Court must deem Kraken's silence a concession and deny the motion.

60. In this Circuit, silence in the face of well-developed arguments is routinely treated as waiver. Where, as here, those arguments go to the very existence, scope, and enforceability of the arbitration clause, that silence is dispositive.

61. Defendant's motion fails to engage with several of Plaintiff's central legal objections to enforcement of the arbitration clause:

   a) Public Policy Conflict under *CUTPA and Hottle*: Kraken entirely sidesteps the argument that enforcing arbitration in this context would contravene the public interest protected by CUTPA. As articulated in *Hottle v. BDO Seidman*, 268 Conn. 694 (2004), because the

alleged misconduct involved violations of duties owed to the public and the profession, and the arbitration would insulate those violations from meaningful judicial scrutiny, the Court held that the arbitration clause was invalid. .

b) Fraudulent Inducement via Deceptive Security Representations: Kraken offers no response to Plaintiff's claim that his assent was secured through materially misleading public assurances regarding SOC 2 compliance and cybersecurity controls.

c) Arbitration Clause Waiver by Prior Conduct: Plaintiff presented documented examples of Kraken resolving materially similar customer complaints outside of arbitration. Kraken's failure to dispute this pattern of selective enforcement waives their right to compel arbitration here.

d) Procedural Breach by Untimely Disclosure: Kraken does not address Plaintiff's argument that its own delay in disclosing the nature of the attack left Plaintiff without a viable opportunity to pursue arbitration within the required time frame—rendering arbitration contractually unavailable.

62. Each of these undisputed grounds offers a legally sufficient basis to deny Kraken's motion. Taken together, their cumulative weight makes enforcement untenable.

## IX NO MATERIAL FACTS IN DISPUTE JUSTIFY A HEARING

63. Plaintiff respectfully submits that no material facts are in dispute that would require evidentiary resolution. The operative facts—Plaintiff's timeline of events, Kraken's delay in disclosure, the public text of Kraken's Terms of Service, the content of its marketing and certifications, and Kraken's historical enforcement record (e.g., Exhibit 71 [ECF No. 28] , BBB

complaints demonstrating Kraken refunded customers or reinstated accounts in materially similar disputes without invoking arbitration, see p. 8, 9)—are all part of the record.

64. Defendants submitted no counter-affidavit or factual rebuttal to challenge Plaintiff's formation-related defenses or timeline. As a result, this motion presents solely legal questions of contract formation, scope, waiver, public policy, and procedural breach, which are appropriately resolved by the Court on the papers. See *Orellana v. Macy's*, No. 3:22-cv-1567 (D. Conn. Oct. 11, 2023); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010).

65. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) – although generally favoring arbitration, the Court emphasizes that procedural defaults can invalidate enforcement.

## X SUMMARY OF UNDISPUTED LEGAL GROUNDS FOR DENIAL WITHOUT HEARING

66. Each of the above legal theories—(1) public policy violation, (2) fraudulent inducement, (3) waiver by selective enforcement, and (4) Kraken's own delay in identifying or disclosing how Plaintiff was victimized—presents an independent and fully developed basis to deny the motion to compel arbitration. Kraken's failure to rebut any of these arguments is dispositive. As courts in this Circuit routinely hold, arguments left uncontested are deemed conceded. Accordingly, Kraken's motion must be denied on waiver grounds alone.

## XI. THE MOTION TO STAY PROCEEDINGS SHOULD ALSO BE DENIED

67. Because Kraken cannot compel arbitration, there is no basis to stay discovery. The Court has already scheduled Rule 26(f) disclosures. Staying discovery here would unjustly prejudice

Plaintiff and allow Kraken to conceal critical documents and communications that will support these claims.

## XII. Summary of Unrebutted Arguments Warranting Denial

68. Defendants failed to rebut the following threshold arguments:

    a) **Fraudulent inducement (formation challenge);**

    b) **Public policy bar under CUTPA and Hottle;**

    c) **Delegation clause invalidity;**

    d) **Waiver through selective enforcement;**

    e) **Material deviation from JAMS process;**

    f) **Procedural breach and untimely notice;**

    g) **Third-party attack not within arbitration scope;**

    h) **Structural bias and venue inaccessibility.**

69. These unrefuted legal issues are dispositive. Under *Orellana v. Macy's*, 2023 WL 6629414, at *6 (D. Conn. Oct. 11, 2023)* and *Jackson v. FedEx*, 766 F.3d 189, 197 (2d Cir. 2014), the Court may deem them **waived and conceded**, and deny the motion on the papers.

## XIII. CONCLUSION

70. For the foregoing reasons, Kraken's motion should be denied. Each of Plaintiff's defenses—fraudulent inducement, public policy violations, waiver, procedural breach, and lack of assent—remains unrebutted and legally sufficient.

71. Plaintiff respectfully requests that the Court deny the Motion to Compel Arbitration and Stay Proceedings and allow discovery to proceed under the existing Rule 26(f) schedule.

Respectfully submitted,

Geoffrey Jacobs

Pro Se Plaintiff

Dated: May 14, 2025

CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, a copy of the foregoing PLAINTIFF'S MEMORANDUM

IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY

PROCEEDINGS was filed electronically via CM/ECF and served by mail or email on counsel

for Defendants:

Timothy G. Ronan, Esq. Pullman & Comley, LLC tronan@pullcom.com

Eric D. Martin, Esq. Norton Rose Fulbright eric.martin@nortonrosefulbright.com

/s/ Geoffrey Jacobs Geoffrey Jacobs