UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GEOFFREY JACOBS,<br><br>          Plaintiff,<br><br>v.<br><br>PAYWARD, INC.,<br>PAYWARD VENTURES, INC.,<br>PAYWARD INTERACTIVE, INC., d/b/a<br>KRAKEN,<br><br>          Defendants. | Case No. 3:25-cv-00567-SVN |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

    Jacobs' Opposition[1] to Kraken's Motion to Compel muddles the straightforward two-step analysis this Court must make when deciding Kraken's motion to compel arbitration: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015). In its Memorandum, Kraken established the existence of the arbitration agreement in the Terms of Service ("TOS") and Jacobs' assent to the TOS. All other issues related to contract formation, validity, and enforcement must be delegated to an arbitrator. As such, this Court should grant Kraken's Motion. Moreover, Jacobs continues to cite fictitious caselaw, which further supports the imposition of sanctions and the awarding of Kraken's legal fees.

---

[1] Kraken responds to Jacobs' Memorandum in Opposition, (ECF No. 49), and "Supporting Summary Memorandum," (ECF No. 49-1). Jacobs' supplemental filings in opposition to Kraken's Motion, ECF No. 52, 54, 55, and 60 are not relevant to the Motion.

### A. Jacobs' Fraudulent Inducement Argument Is a Threshold Issue of Arbitrability That Must Be Delegated to an Arbitrator.

Jacobs argues that there is no agreement to arbitrate because he was fraudulently induced into accepting the TOS. (ECF No. 49 at 3–4, 9). Despite Jacobs' assertions to the contrary, Kraken already addressed this argument in its Memorandum. (ECF No. 45 at 18–19). The FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Pingel v. Gen. Elec. Co.*, No. 3:14-CV-00632 CSH, 2014 WL 7334588, at *5 (D. Conn. Dec. 19, 2014) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)). Here, Jacobs essentially argues that he would not have signed up for a Kraken account and agreed to the TOS had he known that the representations he mentions were false. Because Jacobs' assertions relate to the TOS generally, and not specifically to the arbitration provision, Jacobs' fraud in the inducement defense must be delegated to the arbitrator and is not reviewable by this Court. *Pingel*, 2014 WL 7334588, at *5 ("[W]here a party challenges a contract as a whole . . . as opposed to the specific agreement contained within the contract to arbitrate the question of arbitrability, the challenge is for the arbitrator to decide, not the court."). Despite Jacobs' persistent reliance on *Rent-A-Center* to support his assertion that this Court must review his fraudulent inducement defense, the Supreme Court specifically noted fraudulent inducement as an example of a defense that typically affects the entire contract and therefore must be delegated to an arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). In doing so, it held that, where an arbitration agreement explicitly delegates the authority to decide enforceability to an arbitrator, a court may review only challenges specifically directed at delegation clauses, not to entire agreements. *Id.* at 71.

### B. Jacobs' Dispute Is Within the Scope of the Arbitration Agreement.

Jacobs next argues that the scope of the arbitration clause does not cover his claims. (ECF No. 49 at 4–6, 13). As established in Kraken's Memorandum, all of Jacobs claims relate to (1) Kraken's operation of its Services, such as its website and communications infrastructure, or (2) Kraken's representations about the security of its Services. (Compl., ¶¶ 1, 68–69, 215–216, 267–273, 312–319). This dispute is therefore directly within the scope of the arbitration agreement, which broadly requires that the parties arbitrate "any dispute arising from these Terms or your use of the Services." (Davie Decl., Ex. B, § 23; *id.* Ex. D, § 14).

### C. Threshold Issues of Arbitrability Must Be Delegated to an Arbitrator.

Jacobs also argues that the parties did not "clearly and unmistakably" delegate threshold issues of arbitrability to the arbitrator because incorporation of JAMS rules is not sufficient to constitute an agreement to delegate. (ECF No. 49 at 6–8). But the TOS specifically requires that the parties arbitrate "any dispute," which inherently includes disputes regarding arbitrability. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). And Jacobs fails to rebut Kraken's argument that incorporation of the JAMS rules does evidence the parties' intent to delegate arbitrability issues. *See Emilio v. Sprint Spectrum L.P.,* 508 F. Appx 3, 5 (2d Cir. 2013) (holding that the parties "clearly and unmistakably delegated questions of arbitrability to the arbitrator" where they agreed that "the then-applicable rules of JAMS will apply" to disputes); *Silva v. Schmidt Baking Distribution, LLC*, 732 F. Supp. 3d 194, 208 (D. Conn. 2024) ("[I]ncorporation of the JAMS rules in the [parties' agreement] clearly and unmistakably shows an intent to arbitrate gateway questions of arbitrability.").

As such, (1) the parties entered into a valid agreement to arbitrate disputes, the TOS, (2) Jacobs' dispute with Kraken falls well within the scope of the arbitration agreement, as established

by Jacobs' own allegations, and (3) the parties' arbitration agreement the parties "clearly and unmistakably" delegated threshold issues of arbitrability, including any issues regarding the validity and enforceability of the TOS, to the arbitrator.

### D. Kraken Responded to Each of Jacobs' Arguments.

Notably, Jacobs uses the majority of his Opposition to assert that Kraken failed to respond to the arguments he raised in his motion for declaratory judgment. (ECF No. 49 at 1, 3, 9–21). According to Jacobs, Kraken's alleged silence on his argument serves as a waiver or concession. Jacobs fails to mention that Kraken listed each of Jacobs' nine defenses to arbitration in its Memorandum and did in fact address each. (*See* ECF No. 45 at 17–21).

### E. Jacobs Continues to Rely on Fictitious Caselaw.

Finally, Jacobs again relies on a fictitious opinion, *Orellana v. Macy's*, 2023 WL 6629414, (D. Conn. Oct. 11, 2023), which he attributes to this Court. Despite his express representation that "[e]very argument presented" in his Opposition "rests on verifiable authority," Jacobs cites this non-existent case four times, (ECF No. 49, at 13, 17, 19, 20), and has continued to include this citation in subsequent filings.(*See* ECF No. 49-1 at 2–3, 6–7; ECF No. 54 at 4; ECF No. 55 at 4; ECF No. 58 at 4–5). Jacobs' repeated and pervasive citations to non-existent caselaw—despite Kraken specifically listing the non-existent cases in its Motion and Jacobs' representation that his Opposition "rests on verifiable authority,"—wastes the time and resources of both this Court and Kraken's counsel and shows a continued disregard for the integrity of the legal process. As the court in *Mata* stated:

> Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors . . . There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be

tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity. *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023).

Jacobs' opposition is also riddled with citations to real caselaw that simply do not support his assertion. For example, *Soliman v. Subway* does not address unconscionability, *Hottle* applies New York law and does not mention the Connecticut Unfair Trade Practices Act, and *In re Equifax* does not even mention "arbitration." *See Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 842, n.6 (2d Cir. 2021); *Hottle v. BDO Seidman LLP*, 268 Conn. 694, 698 (2004)*; In re Equifax Inc. Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1324 (N.D. Ga. 2019).

This Court should impose sanctions for this conduct, and Jacobs should be ordered to pay Kraken's attorneys' fees and costs *See Ferris v. Amazon.com Servs., LLC*, No. 3:24-CV-304-MPM-JMV, 2025 WL 1122235, at *2 (N.D. Miss. Apr. 16, 2025); *Kruse v. Karlen*, 692 S.W.3d 43, 52, 54 (Mo. Ct. App. 2024); *Scott v. Federal Nat. Mortg. Ass'n*, 2023 WL 6935586, at *4 (Me. Super. June 14, 2023).

## Conclusion

Kraken has shown that the Terms of Service contain a valid, binding arbitration agreement that Jacobs accepted when he opened and used his account. The parties delegated all gateway issues—including Jacobs' fraudulent-inducement defense—to the arbitrator by incorporating the JAMS Rules and employing broad "any dispute" language. Because every claim Jacobs pleads stems from his use of Kraken's services, the dispute falls squarely within the clause's expansive scope, and his Opposition relies on inapposite—or even fictitious—authority. The Court should therefore compel arbitration, stay the case, and award Kraken its attorneys' fees and costs.

- 6 -

Dated: May 27, 2025                                   Respectfully submitted,

                                                            PULLMAN & COMLEY LLC

/s/ *Timothy G. Ronan*
Timothy G. Ronan
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006
T: 203-330-2000
F: 203-576-8888
tronan@pullcom.com

NORTON ROSE FULBRIGHT US, LLP

/s/ *Eric D. Martin*
Eric D. Martin (*pro hac vice*)
Missouri Bar No. 47558
7676 Forsyth Boulevard, Suite 2230
St. Louis, Missouri 63105
Telephone: (314) 505-8800
Facsimile: (314) 505-8899
Eric.Martin@nortonrosefulbright.com

*Attorneys for Defendants*